STATE OF NORTH CAROLINA v. GEORGE FRANKLIN HEATWOLE, III

No. 119A89-2

(Filed 31 July 1996)

1. **Criminal Law § 475 (NCI4th)— capital murder—graduate student on jury—question in class—same subject as defense contention—motion for appropriate relief denied**

The trial court did not err in a capital resentencing proceeding by denying a motion for appropriate relief made two days after the verdict where defense counsel had informed prospective jurors during jury selection that one defense contention would be that defendant was a paranoid schizophrenic; a juror who was enrolled in a graduate class in developmental psychology asked his professor during the trial if paranoid schizophrenics were violent; the professor replied that they were not; and defense counsel received a phone call from another student in the class the day after the trial. This juror's contact with his professor involved neither extraneous information pursuant to N.C.G.S. § 8C-1, Rule 606(b) nor a matter not in evidence implicating defendant's confrontation rights within the meaning of N.C.G.S. § 15A-1240(c)(1). The juror's question in class was a logical, generic one arising from the natural sequence of class events, did not deal with defendant or with any events arising from this sentencing proceeding, and was not mentioned to other jurors. The right to confront witnesses was not implicated because the question did not deal with defendant or the case, was not discussed with other jurors, and similar testimony was

1

presented to the jury by the State's psychiatrist. Defendant's psychiatric expert never testified to the contrary.

**Am Jur 2d, Trial §§ 1556, 1561.**

**Prejudicial effect of jury's procurement or use of book during deliberations in criminal cases. 35 ALR4th 626.**

2. **Constitutional Law § 252 (NCI4th)— capital sentencing—State's psychiatrist—pretrial statement that no mitigating circumstances found—testimony supported two circumstances**

The trial court did not err in a capital resentencing proceeding by denying defendant a new sentencing hearing based on the State's psychiatrist informing the previous defense counsel and personally informing trial counsel that his examinations of defendant did not reveal the existence of any mitigating circumstances and then testifying at the sentencing hearing that defendant's mental condition supported the existence of two mitigating circumstances. It is clear that the State did not intentionally suppress the evidence; to the contrary, the State elicited testimony in support of mitigating circumstances and in effect helped defendant sustain his burden of persuading the jury of their existence. Even assuming that the State was attempting to suppress evidence, defendant cannot show prejudice.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial § 841.**

**Withholding or suppression of evidence by prosecution in criminal case as vitiating conviction. 34 ALR3d 16.**

3. **Constitutional Law § 252 (NCI4th); Criminal Law § 101 (NCI4th)— capital sentencing—defendant's statements to his sister—not disclosed**

The trial court did not abuse its discretion in a capital resentencing proceeding by not ordering a new sentencing hearing based on the State's failure to provide defense counsel with statements defendant made to his sister where, upon notification of the potential discovery violation, the trial court immediately ordered the State to disclose to defendant the notes concerning the sister's testimony and any other oral statements defendant made which the State had in its possession, the State promptly complied, and defendant requested no further action by the trial court at that time. The evidence supports the trial court's finding

STATE v. HEATWOLE

[344 N.C. 1 (1996)]

and conclusion that the State's failure to divulge the notes containing defendant's statements was neither prejudicial nor in bad faith.

**Am Jur 2d, Trial §§ 1621, 1622.**

**Withholding or suppression of evidence by prosecution in criminal case as vitiating conviction. 34 ALR3d 16.**

4. **Criminal Law §§ 137, 196.1 (NCI4th)— capital sentencing—guilty pleas—waiver of counsel—not in writing**

The trial court did not err in a capital resentencing proceeding by denying defendant's motion to set aside his guilty pleas because there was no written waiver of counsel signed by defendant. The trial judge complied with the constitutional requirements codified in N.C.G.S. § 15A-1242 and adhered to the spirit, if not the letter, of N.C.G.S. § 7A-457 in that he repeatedly asked defendant whether he understood the nature of all the charges against him and the possible punishments for each, whether he understood that he was entitled to assistance of counsel, whether he was under the influence of any intoxicants, whether he was literate, whether he understood that he must abide by court and evidentiary rules, whether he understood that standby counsel would be appointed, and whether he fully understood and appreciated the consequences of his decision to represent himself. Defendant answered in the affirmative in each instance and expressed without equivocation that he wished to proceed *pro se*. This inquiry fully satisfied the requirements of N.C.G.S. § 15A-1242; the fact that there is no written record of the waiver neither alters this conclusion nor invalidates the waiver.

**Am Jur 2d, Criminal Law §§ 592, 593, 758-763.**

**Waiver of right to counsel by insistence upon speedy trial in state criminal case. 19 ALR4th 1299.**

**Supreme Court's views as to what constitutes valid waiver of accused's federal constitutional right to counsel. 101 E. Ed. 2d 1017.**

5. **Criminal Law § 1337 (NCI4th)— capital sentencing—aggravating circumstances—previous felony involving violence—testimony from witnesses to prior felony**

The trial court did not err in a capital resentencing hearing by permitting the State to introduce extensive evidence of the aggra-

vating circumstance that defendant had previously been convicted of a felony involving violence or the threat of violence to another person where three witnesses testified to circumstances surrounding a 1976 crime spree which culminated in defendant's attempted shooting of a law enforcement officer. Although defendant asserts that duly authenticated court records should have sufficed, it has been repeatedly held that the prosecution may introduce the testimony of witnesses to establish the defendant's involvement in the use or threat of violence in the commission of a prior felony, notwithstanding defendant's stipulation. The prosecution must be permitted to present any competent, relevant evidence relating to the defendant's character or record which will substantially support the imposition of the death penalty so as to avoid an arbitrary or erratic imposition of the death penalty.

**Am Jur 2d, Trial §§ 841, 1946.**

**Supreme Court cases determining whether admission of evidence at criminal trial in violation of federal constitutional rule is prejudicial error or harmless error. 31 L. Ed. 2d 921.**

6. **Criminal Law § 1337 (NCI4th)— capital sentencing—aggravating circumstances—prior felony involving violence— offense committed in Texas a misdemeanor in North Carolina—admissible**

There was no plain error in a capital resentencing proceeding where the court did not intervene *ex mero motu* when the State asked a defense witness on cross-examination whether a document from the Texas Department of Corrections indicated that defendant was a recidivist serving a five-year sentence for assaulting a police officer. Although defendant argued that this offense is only a misdemeanor in North Carolina and should not have been admitted relating to the aggravating circumstance that defendant had previously been convicted of a felony involving the use or threat of violence to the person, this circumstance reflects upon a defendant's long-term course of violent conduct and evidence of an individual's prior record is generally a sentencing issue. The Texas incident, which occurred after a North Carolina conviction for assault on a police officer, is relevant because it demonstrates defendant's apparent unwillingness or inability to learn from prior attempts at correction for violent crimes.

Am Jur 2d, Evidence § 139; Trial § 841.

Supreme Court cases determining whether admission of evidence at criminal trial in violation of federal constitutional rule is prejudicial error or harmless error. 31 L. Ed. 2d 921.

7. **Criminal Law § 1314 (NCI4th)— capital sentencing—testimony of psychiatrist—no connection between schizophrenia and murder**

The trial court did not err in a capital resentencing proceeding by allowing the prosecutor to elicit testimony from a psychiatric expert that there is no connection between schizophrenia and murder or by denying defendant's motion *in limine* to prohibit the prosecutor from arguing that most people with a mental illness do not commit crimes. The State was entitled to present evidence rebutting or explaining the proffered mitigating circumstances that the murders were committed while defendant was mentally or emotionally disturbed and that his capacity to appreciate his criminality or to conform his conduct to the law was impaired. Questioning the nexus between suffering from schizophrenia and the tendency to kill is clearly relevant to whether the claimed mental disorder contributed to defendant's ability to appreciate his criminality or to conform to the law and ultimately to his moral culpability for the murders.

Am Jur 2d, Expert and Opinion Evidence §§ 180, 190, 250.

Admissibility of expert testimony as to whether accused had specific intent necessary for conviction. 16 ALR4th 666.

8. **Criminal Law § 452 (NCI4th)— capital sentencing—prosecutor's argument—belittling mitigating circumstance**

There was no gross impropriety in a first-degree murder sentencing hearing where the prosecutor said, "You may find the defendant suffers from a serious mental illness. So what." Prosecutors may legitimately attempt to belittle or deprecate the significance of a mitigating circumstance; this comment constituted a proper argument on the weight of defendant's evidence.

Am Jur 2d, Trial §§ 554-556, 841.

STATE v. HEATWOLE

[344 N.C. 1 (1996)]

### 9. Constitutional Law § 372 (NCI4th)— capital sentencing— constitutionality of death penalty—guilty plea and life sentence in another case

The trial court did not err in a first-degree murder prosecution by denying defendant's motion to declare the death penalty unconstitutional as applied in that judicial district based upon the State permitting another defendant to plead guilty to first-degree murder and receive a life sentence. The trial court found as fact that the other defendant was sentenced to life imprisonment only after findings as to the nonexistence of aggravating circumstances and a ruling that the case was to be tried noncapitally. In this case, the decision to try defendant capitally was supported by sufficient evidence of the existence of aggravating circumstances and defendant has not shown that the decision was improperly based upon on an unjustifiable standard such as race, religion, or other arbitrary classification.

**Am Jur 2d, Trial §§ 149, 150.**

### 10. Criminal Law § 108 (NCI4th)— capital sentencing—discovery—district attorney's file from another case

The trial court did not abuse its discretion in a first-degree murder prosecution by sealing the district attorney's file in another case and not allowing defendant access to its contents. Defendant requested discovery of documents pertaining to a wholly unrelated case and defendant and it would strain the discovery statutes to grant such a request. Moreover, defendant can make no showing of unfair surprise since the evidence is merely collateral, nor can he demonstrate any legitimate assistance to his defense.

**Am Jur 2d, Depositions and Discovery §§ 84, 104.**

**Withholding or suppression of evidence by prosecution in criminal case as vitiating conviction. 34 ALR3d 16.**

### 11. Criminal Law § 1314 (NCI4th)— capital sentencing—statement and letter by defendant—admissible

The trial court did not err in a capital resentencing proceeding where the especially heinous, atrocious, or cruel aggravating circumstance was not submitted by allowing the State to introduce two documents, one an "affidavit" sent by defendant to officers admitting to the murders and explaining the details, and the other a letter from defendant to his father expressing lack of

remorse for killing one victim. Defendant did not challenge the admission of these materials on his direct appeal from his first trial and sentencing hearing. Evidence presented during the guilt-innocence phase of a capital case is admissible and competent as a mater of law during the sentencing phase in the same case; whether the evidence was properly admitted in the first instance is not controlling in a subsequent resentencing proceeding. Although defendant elected to appear *pro se*, constitutional confrontation concerns are not present because the evidence consisted of materials reflecting defendant's own words, not those of a witness whom defendant was entitled to cross-examine. Furthermore, nothing in *State v. McLaughlin*, 341 N.C. 426, suggests that evidence admitted during the guilt-innocence phase of a trial is competent at a sentencing proceeding only where the defendant was previously represented by counsel.

**Am Jur 2d, Trial § 1946.**

**Supreme Court cases determining whether admission of evidence at criminal trial in violation of federal constitutional rule is prejudicial error or harmless error. 31 L. Ed. 2d 921.**

12. **Criminal Law § 1363 (NCI4th)— capital murder—instructions—value of honorable military discharge**

The trial court did not commit plain error in a capital resentencing hearing by not instructing the jury *sua sponte* that an honorable military discharge has mitigating value *per se*. Although defendant argued that an honorable discharge should have mitigating value in a capital sentencing proceeding because it has mitigating value in the Fair Sentencing Act, the legislature has determined that specific mitigating circumstances have mitigating value by including those circumstances in the death penalty statute. An honorable discharge is not listed in N.C.G.S. § 15A-2000(f) as a mitigating circumstance; thus, it is a nonstatutory mitigating circumstance that the jury may consider but need not find to be mitigating.

**Am Jur 2d, Trial §§ 841, 1169.**

13. **Criminal Law § 1309 (NCI4th); Evidence and Witnesses § 1700 (NCI4th)— capital sentencing—autopsy photographs—admissible**

The trial court did not abuse its discretion in a capital resentencing proceeding by admitting into evidence autopsy pho-

tographs. The photographs were used strictly to illustrate the testimony of the medical examiner, each illustrated either a distinct gunshot wound or the extent of the injuries the victims suffered, none were repetitive or inordinately prejudicial, and, with one exception, all had previously been admitted during the guilt-innocence phase.

**Am Jur 2d, Evidence §§ 630, 964.**

**Supreme Court cases determining whether admission of evidence at criminal trial in violation of federal constitutional rule is prejudicial error or harmless error. 31 L. Ed. 2d 921.**

14. **Criminal Law § 1314 (NCI4th)— capital sentencing—redirect examination by statement of psychiatrist—whether defendant was able to understand and appreciate the nature of his actions**

The trial court did not err in a capital resentencing proceeding by permitting the State on redirect examination to question its psychiatric expert about whether defendant was able to understand and appreciate the nature of his actions. Although defendant contended that his competency at the time of the crimes was not an issue at the sentencing proceeding, defendant offered evidence in support of the mitigating circumstance that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired at the time of the murders and the State is entitled to present evidence tending to rebut matters proffered in mitigation.

**Am Jur 2d, Expert and Opinion Evidence § 167; Trial § 841.**

**Admissibility of expert testimony as to whether accused had specific intent necessary for conviction. 16 ALR4th 666.**

15. **Criminal Law § 107 (NCI4th)— capital sentencing—prosecutor's notes from interview with witness—defendant not allowed to review**

The trial court did not err during a capital resentencing proceeding by denying defendant's request to view notes the prosecutor took during an interview with a witness who was defendant's stepbrother and the son of a victim. The notes were sealed

STATE v. HEATWOLE

[344 N.C. 1 (1996)]

for appellate review and were devoid of information beneficial to defendant.

**Am Jur 2d, Trial §§ 1621, 1622.**

**Withholding or suppression of evidence by prosecution in criminal case as vitiating conviction. 34 ALR3d 16.**

16. **Criminal Law § 462 (NCI4th)— capital sentencing—prosecutor's argument—defendant's violent nature—facts not in evidence—no gross error**

The trial court did not err in a capital sentencing proceeding by not intervening *ex mero motu* in the prosecutor's argument where defendant contended that the prosecutor argued facts not in evidence in contending that defendant's witness admitted that defendant was convicted of assaulting a sailor while serving in the Marine Corps. Given repeated examples of defendant's violent nature, the prosecutor's misstatement cannot be construed as so grossly improper that the trial court should have intervened *ex mero motu*.

**Am Jur 2d, Trial §§ 609, 616, 626.**

**Propriety and prejudicial effect of prosecutor's argument to jury indicating that he has additional evidence of defendant's guilt which he did not deem necessary to present. 90 ALR3d 646.**

17. **Criminal Law § 473 (NCI4th)— capital sentencing—cumulative conduct of prosecutor—no denial of fair hearing**

The cumulative conduct of the prosecution in a capital resentencing proceeding did not deprive defendant of a fair trial where defendant's arguments were rejected individually, and, absent some further showing of prosecutorial misconduct, there is no basis for finding them to constitute error collectively. *State v. Sanderson*, 336 N.C. 1, upon which defendant relies, involved a persistent pattern of uncorrected and prejudicial abuse before the jury which clearly prevented the defendant from receiving a fair sentencing proceeding; here, the prosecutor's conduct was within the permissible parameters of professionalism, viewed in the context of his role as a zealous advocate for criminal convictions.

**Am Jur 2d, Trial § 490.**

**18. Criminal Law § 1373 (NCI4th)— death sentence—not disproportionate**

A death sentence for a first-degree murder was not disproportionate where the record fully supports the aggravating circumstances the jury found, there is no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration, and this case is distinguishable from those cases where the death penalty was found disproportionate. The present case is more similar to cases in which the sentence of death was found proportionate to those in which it was found disproportionate.

**Am Jur 2d, Criminal Law § 609; Trial § 841.**

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed. 51 L. Ed. 2d 886.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing two sentences of death entered by Cornelius, J., at the 24 October 1994 Criminal Session of Superior Court, Moore County, on a jury verdict finding defendant guilty of two counts of first-degree murder. Heard in the Supreme Court 11 March 1996.

*Michael F. Easley, Attorney General, by Joan Herre Erwin, Special Deputy Attorney General, for the State.*

*Bruce T. Cunningham, Jr., and Marsh Smith for defendant-appellant.*

WHICHARD, Justice.

In February 1989 defendant pled guilty to the first-degree murders of his stepmother, Alta Heatwole, and a security guard, John Garrison. On appeal this Court found prejudicial error under *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990), and remanded for a new capital sentencing proceeding. *State v. Heatwole*, 333 N.C. 156, 423 S.E.2d 735 (1992). Upon resentencing, the jury again recommended sentences of death for each murder. Defendant now appeals from these sentences. We find no prejudicial error and hold that defendant received a fair capital sentencing proceeding and that the sentences of death are not disproportionate.

The State's evidence tended to show that around 11:00 p.m. on 26 February 1988, defendant went to the home of his former girlfriend,

Kim Chavis Garcia. There, he shot at Garcia's sister, Vicky Chavis. The shot missed Chavis, but she fell, feigning death. Garcia and others ran to the bedroom. Defendant fired two or three shots at two men, Ricky Cummings and Donald Locklear, who were attempting to escape through the bedroom window. One shot struck Cummings, wounding him in the left leg.

Defendant then handcuffed Garcia and, taking her with him, drove to the Woodlake subdivision where his father and stepmother lived. At the entrance gate the security guard, Edgar John Garrison, said "hello" to defendant and waved him through. Defendant stopped, rolled down the window, and shot Garrison twice, fatally wounding him.

Defendant proceeded to his father's house where he forced Garcia, who was still handcuffed, out of the truck and to the front door. Defendant rang the doorbell; when his father answered, defendant pushed his way inside and put the pistol to his father's head. He then handcuffed his father and Garcia together. When defendant's stepmother, Alta Hamilton Heatwole, came out of the bedroom, defendant shot her twice. She fell and made her way back into the bedroom. Defendant followed her to the bedroom where he kicked her several times, screamed "Die b----," and shot her twice in the head at close range, fatally wounding her.

By this time law enforcement officers had converged on the house. Defendant removed the handcuffs from his father. While defendant's attention was diverted, his father ran out the front door with his hands up. Defendant then removed the handcuffs from Garcia, gave her the pistol, and sent her out of the house. Defendant followed Garcia out, laid down, and was arrested.

[1] Defendant first contends that the trial court erred in denying his motion for appropriate relief made two days after the jury returned its verdict. Defendant seeks a new trial based on what he asserts was juror misconduct. During jury selection defense counsel informed the prospective jurors that a defense contention was that defendant was a paranoid schizophrenic. The trial began on 24 October 1994 and lasted until 9 November 1994. On 2 November 1994 juror Robert Kennedy, who was enrolled in a graduate class in developmental psychology, asked his professor if paranoid schizophrenics were violent. The professor replied that they were not. On 10 November 1994 defense counsel received a phone call from another student in the class informing them of the question. Based on this information,

defendant filed his motion for relief seeking a new trial due to juror misconduct.

Defendant now contends that juror Kennedy's exchange with his professor violated defendant's Sixth Amendment constitutional right to confront the witnesses and evidence against him. He further argues that it was extraneous information within the meaning and intent of Rule 606(b) of the North Carolina Rules of Evidence, which information contradicted the defense position, thereby prejudicing him and entitling him to a new trial. We disagree.

Generally, once a verdict is rendered, jurors may not impeach it. *State v. Cherry*, 298 N.C. 86, 100, 257 S.E.2d 551, 560 (1979), *cert. denied*, 446 U.S. 941, 64 L. Ed. 2d 796 (1980). Section 15A-1240 of the North Carolina General Statutes and Rule 606(b) of the Rules of Evidence provide limited exceptions to the rule against impeachment. Section 15A-1240 allows impeachment of a verdict only in a criminal case and only concerning (1) whether the verdict was reached by lot; (2) bribery, intimidation, or attempted bribery or intimidation of a juror; or (3) matters not in evidence which came to the attention of one or more jurors under circumstances which would violate the defendant's constitutional right to confront the witnesses against him. N.C.G.S. § 15A-1240(b), (c) (1988). Rule 606(b) provides that when the validity of a verdict is challenged, a juror is competent to testify only "on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." N.C.G.S. § 8C-1, Rule 606(b) (1988). We hold that juror Kennedy's contact with his professor was neither "extraneous information" pursuant to Rule 606(b) nor a "matter not in evidence" implicating defendant's confrontation rights within the meaning of N.C.G.S. § 15A-1240(c)(1).

This Court has interpreted extraneous information under Rule 606(b) to mean information that reaches a juror without being introduced into evidence and that deals specifically with the defendant or the case being tried. *State v. Rosier*, 322 N.C. 826, 832, 370 S.E.2d 359, 363 (1988). It does not include general information that a juror has gained in his day-to-day experiences. *Id.* Here, the evidence tended to show that juror Kennedy was enrolled in a graduate level educational psychology class. He had previously taken several standard psychology classes and was generally familiar with schizophrenia. During the 2 November 1994 class, Kennedy's professor lectured on schizophre-

nia, delusions, and hallucinations. A student asked if schizophrenics commit violent acts, to which the professor responded in the negative. Juror Kennedy then asked if paranoid schizophrenics commit violent acts, to which the professor again replied in the negative. Kennedy asked no further questions, nor did he mention this defendant or this case. The incident occurred before either defense expert testified on the matter at the sentencing proceeding. At the motion hearing Kennedy testified that the basis for the question was a research paper he was doing for a class dealing with teenagers and violence. Kennedy's question was a logical, generic one arising from the natural sequence of class events. It did not deal with defendant or with any events arising from this sentencing proceeding, nor did juror Kennedy mention the incident to other jurors. Under these circumstances, defendant is not entitled to relief under Rule 606(b).

We likewise conclude that N.C.G.S. § 15A-1240 affords defendant no relief. Juror Kennedy's conduct was not tantamount to the kind of external influence which ordinarily implicates a defendant's Sixth Amendment right to confront witnesses against him. *Compare, e.g., State v. Lyles,* 94 N.C. App. 240, 380 S.E.2d 390 (1989) (jurors peeled back tape on a photograph introduced into evidence, revealing a time of arrest notation which directly contradicted defendant's alibi; exposure to information on photograph held prejudicial and violative of the defendant's constitutional right of confrontation). As noted, Kennedy's question did not deal with defendant or the case, and Kennedy did not discuss it with other jurors. Further, Dr. Rollins testified for the State that paranoid schizophrenics are not classically violent. Dr. Royal, defendant's psychiatric expert witness, never testified to the contrary. Hence, defendant had the opportunity to present and challenge precisely the information conveyed in the exchange between juror Kennedy and his professor. The incident therefore cannot be considered a matter not in evidence within the contemplation of N.C.G.S. § 15A-1240. Defendant's assignment of error on these grounds is accordingly overruled.

[2] Defendant next contends the trial court erred in failing to grant him a new sentencing proceeding based on the State's purported violation of *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215 (1963). Dr. Rollins, a forensic psychiatrist at Dorothea Dix Hospital, examined defendant on numerous occasions. Dr. Rollins informed defendant's previous counsel that his examinations did not reveal the existence of any mitigating circumstances. He personally so informed defendant's present counsel. However, at the sentencing proceeding Dr. Rollins

testified for the State, on rebuttal, that in his opinion defendant's mental condition supported the existence of two mitigating circumstances. He testified that defendant suffered from antisocial personality disorder and that this condition impaired his capacity to conform his conduct to the law and constituted mental or emotional disturbance which influenced defendant's behavior. N.C.G.S. § 15A-2000(f)(2), (6) (1988) (amended 1994). Based on this evidence, defendant now argues that the State withheld evidence of mitigating circumstances in violation of *Brady* and that the failure to divulge information concerning Dr. Rollins' diagnoses rendered defense counsel ineffective during cross-examination, thereby prejudicing defendant. We disagree.

In *Brady v. Maryland*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87, 10 L. Ed. 2d at 218. Evidence is material only if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494 (1985). Here, although the record is silent as to when the State actually became aware of Dr. Rollins' change in opinion, it is clear that the State did not intentionally suppress the evidence. To the contrary, the State elicited Dr. Rollins' testimony in support of the mitigating circumstances and in effect helped defendant sustain his burden of persuading the jury of their existence.

Even assuming *arguendo* that the State was attempting to suppress evidence, defendant nonetheless cannot show prejudice. The evidence was before the jury and available for defendant to utilize as support for any arguments concerning mitigation. In fact, counsel for defendant argued to the jury that

> Dr. Rollins himself said that mental illness was a basis for his opinion that on that day [defendant] was under the influence of a mental disturbance and his capacity was impaired. Dr. Rollins himself, the State's own witness, says that the answer to mitigating circumstances 1 and 2 is yes.

Under these circumstances, it is unlikely that the result of the sentencing proceeding would have been different had the information in question been disclosed to defendant sooner. This assignment of error is overruled.

[3] Similarly, by his next assignment of error, defendant contends that the trial court abused its discretion in not ordering a new sentencing proceeding based on the State's failure to provide defense counsel with statements defendant made to his sister. Defendant again rests his argument on *Brady*, as well as on N.C.G.S. § 15A-903(a)(2).

Defense counsel called Cindy Anderson, defendant's sister, to testify concerning defendant's alleged mental illness. During cross-examination the prosecutor asked Anderson if she recalled defendant saying he "needed a good [lawyer] to beat this thing." Anderson was also asked if she recalled telling her brother he had killed two people and defendant responding, "Says who? Nobody has proved anything." Anderson was interviewed by an assistant district attorney shortly after the murders, and these statements were in the form of handwritten notes. Anderson said she did not remember the details of the conversation with the assistant district attorney but indicated that she probably said those things.

Defendant did not object to the testimony and did not mention it until the following day when he requested a copy of the transcript of the conversation between Anderson and the assistant district attorney. The State explained that there was no transcript but only some notes made of the conversation. The trial court immediately ordered the material turned over and further ordered the State to turn over any other notes it possessed containing statements defendant made. The State objected on the ground that the notes merely constituted work product, but it nonetheless immediately complied with the court's order. Defendant made no further objection or motion at that time. It was only at the conclusion of the sentencing proceeding, after a sentence of death had been imposed, that defendant filed a motion for appropriate relief asserting that he had been prejudiced by the cross-examination of Anderson and by the State's failure to provide him with a copy of the conversation between Anderson and the assistant district attorney.

Upon a motion by a defendant, the State must divulge the substance of any oral statements a defendant made which the State intends to offer into evidence. N.C.G.S. § 15A-903(a)(2) (1988). Whether a party has complied with discovery, however, and what sanctions, if any, to impose are questions addressed to the sound discretion of the trial court. *State v. Weeks*, 322 N.C. 152, 171, 367 S.E.2d 895, 906 (1988). "[D]iscretionary rulings of the trial court will not be

disturbed on the issue of failure to make discovery absent a showing of bad faith by the [S]tate in its noncompliance with the discovery requirements." *State v. McClintick*, 315 N.C. 649, 662, 340 S.E.2d 41, 49 (1986). "The choice of which sanction to apply, if any, rests in the sound discretion of the trial court and is not reviewable absent a showing of an abuse of that discretion." *State v. Gladden*, 315 N.C. 398, 412, 340 S.E.2d 673, 682, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986).

Here, upon notification of the potential discovery violation, the trial court immediately ordered the State to disclose to defendant the notes concerning Cindy Anderson's testimony and any other oral statements defendant made which the State had in its possession. The State promptly complied. Defendant requested no further action by the trial court at that time, and the trial court ordered no further sanctions against the State. We conclude that the trial court's order of disclosure was a proper exercise of its discretion.

Following defendant's motion for appropriate relief, wherein he alleged prejudice and ineffective assistance of counsel as a result of the State's actions, the trial court made the following relevant findings of fact:

> [T]hat the statements made by Mr. Heatwole were statements that would have been prejudicial had they been made in respect to the first phase of the trial, the guilt/innocence phase. That they as such were not. That these matters had been admitted by the defendant's pleas . . . and . . . were really not at issue . . . and these statements were . . . not prejudicial to the defendant from the standpoint of mitigation because the defense did in fact go into the mitigating value of these statements that he was not in touch with reality when he made these statements to his sister, and his sister was cross examined by both the State and defendant in regards to the reality.

> . . . .

> That the witness Cindy Anderson remained in the courtroom, was available for redirect or recross by both the Defense and the State, and that the statements made by Mr. Heatwole were more of a mitigating nature, and were not prejudicial to him because they were in fact inquired to as to whether or not those statements were statements made by someone in touch with reality.

> . . . .

STATE v. HEATWOLE

[344 N.C. 1 (1996)]

. . . [T]hat the State made a substantial effort to comply with all discovery requests due to the number of documents that were provided to the Defense, and [that] there has been no showing of bad faith on the part of the State with regards to [these notes.]

. . . .

. . . [T]hat the statements made by Mr. Heatwole were not prejudicial to him because he has in fact admitted guilt as to both murders, and they were not an issue for the jury. These statements were more of a mitigating nature and which [sic] the Defense had every opportunity to cross examine the witness and place him in part in context with two expert witnesses who later testified as to his mental state.

The evidence supports the trial court's finding and conclusion that the State's failure to divulge the notes containing defendant's statements to Anderson was neither prejudicial nor in bad faith. We therefore hold that the trial court did not abuse its discretion by denying defendant's motion for appropriate relief. This assignment of error is overruled.

[4] By another assignment of error, defendant argues that the trial court erred in denying his motion to set aside his guilty pleas because there was no written waiver of counsel signed by defendant. On 20 February 1989, prior to defendant's initial guilt determination proceeding, a hearing was held before the Honorable William H. Freeman to inquire whether defendant could represent himself. Following the hearing, Judge Freeman entered an order that defendant knowingly, intelligently, and voluntarily waived his right to court-appointed counsel and that he could proceed *pro se*. However, the transcript of the hearing does not indicate that defendant was ever requested to sign a written waiver of counsel, nor do the court records contain a signed waiver. Six years and two sentencing proceedings later, defendant now argues that his written waiver is required pursuant to N.C.G.S. § 7A-457, as well as by the state and federal Constitutions.

Assuming *arguendo* that this assignment of error is not procedurally barred, our review of the transcripts indicates that Judge Freeman complied with the mandate of N.C.G.S. § 15A-1242, which sets forth the prerequisites for a defendant's waiver of his right to counsel and his election to represent himself. The court must make a thorough inquiry and be satisfied that the defendant was clearly

advised of his right to assistance of counsel, that he understood and appreciated the consequences of his decision to represent himself, and that he comprehended the nature of the charges and the range of possible punishments. N.C.G.S § 15A-1242 (1988). The waiver of counsel must be voluntary and knowing, and " 'the record must show that the defendant was literate and competent, that he understood the consequences of his waiver, and that, in waiving his right, he was voluntarily exercising his own free will.' " *State v. Gerald*, 304 N.C. 511, 518-19, 284 S.E.2d 312, 317 (1981) (quoting *State v. Thacker*, 301 N.C. 348, 354, 271 S.E.2d 252, 256 (1980)). The inquiry required by N.C.G.S. § 15A-1242, if properly conducted, fully satisfies constitutional requirements. *State v. Carter*, 338 N.C. 569, 581, 451 S.E.2d 157, 163 (1994), *cert. denied*, —— U.S. ——, 132 L. Ed. 2d 263 (1995).

Here, Judge Freeman repeatedly asked defendant whether he understood the nature of all the charges against him and the possible punishments for each, whether he understood that he was entitled to assistance of counsel, whether he was under the influence of any intoxicants, whether he was literate, whether he understood that he must abide by court and evidentiary rules, whether he understood that standby counsel would be appointed, and whether he fully understood and appreciated the consequences of his decision to represent himself. In each instance defendant answered in the affirmative and expressed without equivocation that he wished to proceed *pro se*. We conclude that Judge Freeman's inquiry fully satisfied the requirements of N.C.G.S. § 15A-1242 that waiver of counsel must be knowing and voluntary.

The fact that there is no written record of the waiver neither alters this conclusion nor invalidates the waiver. While N.C.G.S. § 7A-457(a) provides for a written waiver of counsel from an indigent defendant, *see State v. Thomas*, 331 N.C. 671, 675, 417 S.E.2d 473, 476 (1992), this section has been construed as directory, not mandatory, so long as the provisions of the statute have otherwise been followed. *State v. Smith*, 24 N.C. App. 498, 501, 211 S.E.2d 539, 541 (1975), *overruled on other grounds by State v. Barnes*, 324 N.C. 539, 380 S.E.2d 118 (1989). Section 7A-457 requires that the trial court find of record that at the time of waiver, the defendant acted with full awareness of his rights and of the consequences of the waiver. N.C.G.S. § 7A-457(a) (1995). This is similar to the inquiry required under N.C.G.S. § 15A-1242 and may be satisfied in a like manner. As we held above, it is clear from the record that Judge Freeman complied with the constitutional requirements codified in section

15A-1242; we likewise conclude that he adhered to the spirit, if not the letter, of section 7A-457. We therefore find no merit to defendant's arguments.

**[5]** Defendant next contends that the trial court erred in permitting the State to introduce extensive evidence to prove the existence of the aggravating circumstance that defendant had previously been convicted of a felony involving violence or the threat of violence to another person. N.C.G.S. § 15A-2000(e)(3). He argues that as a result of allowing three witnesses to testify to circumstances surrounding a 1976 crime spree which culminated in defendant's attempt to shoot a North Carolina law enforcement officer, the sentencing proceeding turned into a "mini-trial" of the prior offenses. Defendant asserts that duly authenticated court records of his previous convictions should have sufficed to show the existence of the aggravating circumstance, especially since defendant conceded to having engaged in significant prior criminal activity. We disagree.

This Court has repeatedly held that the prosecution may introduce the testimony of witnesses to establish the defendant's involvement in the use or threat of violence to a person in the commission of a prior felony, notwithstanding the defendant's stipulation to the record of conviction. *See State v. McDougall*, 308 N.C. 1, 20-23, 301 S.E.2d 308, 320-22, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 173 (1983); *State v. Taylor*, 304 N.C. 249, 279, 283 S.E.2d 761, 780 (1981), *cert. denied*, 463 U.S. 1213, 77 L. Ed. 2d 1398 (1983). The better rule is "to allow both sides to introduce evidence in support of aggravating and mitigating circumstances. . . . If the capital felony of which defendant has previously been convicted was a particularly shocking or heinous crime, the jury should be so informed." *Id.* The prosecution "must be permitted to present *any* competent, relevant evidence relating to the defendant's character or record which will substantially support the imposition of the death penalty so as to avoid an arbitrary or erratic imposition of the death penalty." *State v. Brown*, 315 N.C. 40, 61, 337 S.E.2d 808, 824 (1985), *cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988). We reaffirm these principles and, applying them here, conclude that the trial court correctly admitted the evidence concerning the circumstances of defendant's 1976 convictions.

**[6]** By his next assignment of error, defendant contends the trial court committed plain error by declining to intervene, *ex mero motu*,

during the State's cross-examination of Beth McAllister. McAllister, a "mitigation specialist," testified at length about defendant's social history. On cross-examination the prosecutor asked her whether a document from the Texas Department of Corrections indicated that defendant was a recidivist serving a five-year sentence for assaulting a police officer. Defendant argues that this offense is only a misdemeanor in North Carolina, and therefore the trial court erred in allowing the State to introduce this evidence.

"Evidence may be presented as to any matter that the court deems relevant to sentence, and may include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (e) and (f)." N.C.G.S. § 15A-2000(a)(3). The State submitted as an aggravating circumstance that defendant had been previously convicted of a felony involving the use or threat of violence to the person. N.C.G.S. § 15A-2000(e)(3). We have stated that this aggravating circumstance reflects upon a defendant's long-term course of violent conduct. *State v. Brown*, 320 N.C. 179, 224, 358 S.E.2d 1, 30, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987). Further, evidence of an individual's prior record is generally a relevant sentencing issue. *Zant v. Stephens*, 462 U.S. 862, 879, 77 L. Ed. 2d 235, 251 (1983). The Texas incident, which occurred after the North Carolina conviction for assault on a police officer, is relevant to the (e)(3) aggravating circumstance because it demonstrates defendant's apparent unwillingness or inability to learn from prior attempts at correction for violent crimes. The trial court properly declined to intervene *ex mero motu* in this instance. This assignment of error is overruled.

[7] Defendant next argues that the trial court erred in allowing the prosecutor to elicit testimony from psychiatric expert Dr. Bob Rollins that there is no connection between schizophrenia and murder. Defendant further asserts that the trial court erred in denying defendant's motion *in limine* to prohibit the prosecutor from arguing that most people with a mental illness do not commit crimes. Defendant rests his arguments on *Penry v. Lynaugh*, 492 U.S. 302, 106 L. Ed. 2d 256 (1989), where the United States Supreme Court held that there is a nexus between a defendant's mental health and his moral culpability for an offense. *Id.* at 319, 106 L. Ed. 2d at 278. Because the thrust of defendant's case was that he was a paranoid schizophrenic and that this influenced his conduct at the time of the murders, he contends the State should not have been allowed to nullify the relevance of any evidence offered to that effect.

Defendant presented evidence through Dr. Royal, his psychiatric expert, that he suffered from schizophrenia and that he was under a mental disturbance at the time of the murders. In response, the State presented the testimony of Dr. Rollins, who conceded that defendant has a serious mental condition but diagnosed it as antisocial personality disorder rather than schizophrenia. Dr. Rollins further opined that there was no connection between schizophrenia and murder.

The State may offer evidence tending to rebut the truth of any mitigating circumstance upon which defendant relies and which is supported by the evidence. *State v. Silhan*, 302 N.C. 223, 273, 275 S.E.2d 450, 484 (1981). Here, once defendant offered evidence in support of the mitigating circumstances that the murders were committed while defendant was mentally or emotionally disturbed, N.C.G.S. § 15A-2000(f)(2), and that his capacity to appreciate his criminality or to conform his conduct to the law was impaired, N.C.G.S. § 15A-2000(f)(6), the State was entitled to present evidence rebutting or explaining the proffered circumstances. To this end, the State properly questioned the nexus between suffering from schizophrenia and the tendency to kill. Such an inquiry is clearly relevant to whether the claimed mental disorder contributed to defendant's ability to appreciate his criminality or to conform to the law, and ultimately to defendant's moral culpability for the murders.

[8] Defendant also challenges the prosecutor's comment, "You may find the defendant suffers from a serious mental illness. So what." Prosecutors may legitimately attempt to belittle or deprecate the significance of a mitigating circumstance. *State v. Basden*, 339 N.C. 288, 305, 451 S.E.2d 238, 247 (1994), *cert. denied*, —— U.S. ——, 132 L. Ed. 2d 845 (1995). This comment constituted a proper argument on the weight of defendant's evidence and did not amount to gross impropriety. These assignments of error are overruled.

[9] Defendant next argues that the trial court erred in denying his motion to declare the death penalty unconstitutional as applied in the Twentieth Judicial District. The trial court held a hearing on the motion, wherein defendant argued that the State permitted another defendant, Victor Patterson, to plead guilty to first-degree murder and receive a life sentence even though there allegedly was evidence of aggravating circumstances. Based on these events, defendant contends that the death penalty is administered arbitrarily and with unguided discretion in the Twentieth Judicial District and that there-

fore his death sentences must be stricken and sentences of life imprisonment imposed.

In its order denying defendant's motion, the trial court found as fact that the presiding judge in Patterson's case reviewed all eleven statutory aggravating circumstances. It further found that Patterson was sentenced to life imprisonment only after the court made factual findings as to the nonexistence of aggravating circumstances and ruled that the case was to be tried noncapitally. These findings are supported by the evidence presented at the hearing and are binding on appeal. *State v. Barnett*, 307 N.C. 608, 614, 300 S.E.2d 340, 343 (1983).

Defendant correctly notes that the decision whether to try a first-degree murder case as a capital case is not within the district attorney's discretion. *State v. Britt*, 320 N.C. 705, 710, 360 S.E.2d 660, 662 (1987). However, where there is no evidence of any aggravating circumstance, such as in the Patterson case, the trial court need not conduct the sentencing proceeding set forth in N.C.G.S. § 15A-2000 but may pronounce a sentence of life imprisonment. *Id.* This is not tantamount to an improper discretionary sentencing decision because under the capital punishment statute, the death penalty cannot be imposed absent the existence of one or more aggravating circumstances. Here, however, the decision to try defendant capitally was supported by sufficient evidence of the existence of aggravating circumstances. Further, defendant has not shown that the decision was improperly based on an unjustifiable standard such as race, religion, or other arbitrary classification. *See Bordenkircher v. Hayes*, 434 U.S. 357, 54 L. Ed. 2d 604 (1978); *Oyler v. Boles*, 368 U.S. 448, 7 L. Ed. 2d 446 (1962). We therefore conclude that the trial court properly denied defendant's motion.

[10] In a related assignment, defendant contends the trial court erred by sealing the district attorney's file from the Patterson case and not allowing defendant access to its contents. He requests that this Court review the file to determine whether there are photographs in the file which support the existence of an aggravating circumstance. We decline to do so.

The common law recognizes no right to discovery in criminal cases. *State v. Davis*, 282 N.C. 107, 110, 191 S.E.2d 664, 666 (1972). The rules of discovery contained in the Criminal Procedure Act must therefore be viewed as in derogation of the common law. The purpose of the discovery procedures is to protect the defendant from unfair

**STATE v. HEATWOLE**

[344 N.C. 1 (1996)]

surprise and to grant him access to any evidence which he could legitimately offer in his defense. *State v. Stevens*, 295 N.C. 21, 37, 243 S.E.2d 771, 781 (1978). These statutory provisions do not, however, alter the general rule that the work product or investigative files of the district attorney, law enforcement agencies, or others assisting in the preparation of the case are not open to discovery. *State v. Brewer*, 325 N.C. 550, 574, 386 S.E.2d 569, 582 (1989), *cert. denied*, 495 U.S. 951, 109 L. Ed. 2d 541 (1990). A defendant is not entitled to the granting of his motion "for a fishing expedition." *Davis*, 282 N.C. at 111-12, 191 S.E.2d at 667.

Here, defendant requested discovery of documents pertaining not to his own case, but to a wholly unrelated case and defendant. It would strain the reading of the discovery statutes, N.C.G.S. § 15A-903 in particular, to grant such a request and to suggest that the trial court abused its discretion in denying it. Even assuming *arguendo* that these documents did not constitute work product and that defendant possessed the requisite statutory authority to request production of the Patterson files, he nevertheless can make no showing of unfair surprise since the evidence is merely collateral to his case, nor can he demonstrate any legitimate assistance to his defense in view of our holding above that the death penalty is not arbitrarily applied in the Twentieth Judicial District. In sum, we hold that the file defendant sought was neither relevant nor necessary to his defense and that the trial court did not abuse its discretion in withholding it from him and sealing it for appellate review.

[11] Defendant next argues that the trial court erred in allowing the State to introduce two documents, one an "affidavit" sent by defendant to a police officer admitting to the murders and explaining the details, and the other a letter defendant wrote to his father expressing his lack of remorse for killing victim Heatwole. Defendant argues that since the N.C.G.S. § 15A-2000(e)(9) aggravating circumstance that the murder was especially heinous, atrocious, or cruel was not submitted at either sentencing proceeding, the letters were irrelevant and unduly prejudicial to any issue the jury decided.

Defendant did not challenge the admission of these materials on his direct appeal from the first trial and sentencing proceeding. In *State v. McLaughlin*, this Court stated that N.C.G.S. § 15A-2000(a)(3) expressly provides that evidence presented during the guilt-innocence determination phase of a capital case is admissible and competent as a matter of law during a capital sentencing proceeding

in the same case. *McLaughlin*, 341 N.C. 426, 458, 462 S.E.2d 1, 18 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 879 (1996); *see* N.C.G.S. § 15A-2000(a)(3). Whether the evidence was properly admitted in the first instance is not controlling in a subsequent resentencing proceeding. *McLaughlin*, 341 N.C. at 458, 462 S.E.2d at 18.

Defendant nevertheless asserts that *McLaughlin* does not constitute binding precedent on this issue because in that case, we emphasized the presence of counsel to cross-examine; here, defendant had no counsel because he elected to appear *pro se* and obviously lacked the legal experience to lodge an objection to the admissibility of the materials. The distinction, however, goes to the nature of the challenged evidence. *McLaughlin* addressed the question of whether the admission of recorded prior testimony violated the defendant's confrontation rights under the federal and state Constitutions. *Id.* Here, the evidence consisted of materials reflecting defendant's own words, not those of a witness whom defendant was entitled to cross-examine. Hence, the constitutional concerns of *McLaughlin* are not present here. Further, nothing in *McLaughlin* suggests that evidence admitted during the guilt-innocence phase of a trial is competent at a sentencing proceeding only where the defendant was previously represented by counsel. We therefore conclude that the evidence was properly admitted.

[12] Defendant next argues that the trial court erred in not instructing the jury *sua sponte* that an honorable military discharge has mitigating value *per se*. The crux of defendant's argument is that under the North Carolina Fair Sentencing Act, an honorable discharge is deemed to have mitigating value. N.C.G.S. § 15A-1340.16(e)(14) (Supp. 1995). Therefore, according to defendant, it should have mitigating value in a capital sentencing proceeding as well, and the trial court should be required to so instruct. Defendant neither requested such an instruction nor objected to its absence, but he now contends the trial court committed plain error in not so instructing.

By including specific mitigating circumstances in the death penalty statute, the legislature has determined that those circumstances have mitigating value. *State v. Fullwood*, 323 N.C. 371, 396, 373 S.E.2d 518, 533 (1988), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990). It is, however, for the jury to determine whether submitted nonstatutory mitigating circumstances have mitigating value. *Id.* An honorable discharge is not listed in N.C.G.S. § 15A-2000(f) as a mitigating circumstance. Thus, for purposes of cap-

STATE v. HEATWOLE

[344 N.C. 1 (1996)]

ital sentencing, it is a nonstatutory mitigating circumstance that the jury may consider but need not find to be mitigating. Therefore, the trial court did not err in not instructing *sua sponte* that an honorable discharge has mitigating value.

[13] By his next assignment of error, defendant argues that the trial court erred by admitting into evidence a number of autopsy photographs. He asserts that the photographs were unduly prejudicial and not relevant to any sentencing issue. We disagree.

Any evidence that the trial court "deems relevant to sentenc[ing]" may be introduced in the sentencing proceeding, *State v. Daughtry*, 340 N.C. 488, 517, 459 S.E.2d 747, 762 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 739 (1996); N.C.G.S. § 15A-2000(a)(3), and the State must be permitted to present any competent evidence supporting the imposition of the death penalty, *Brown*, 315 N.C. at 61, 337 S.E.2d at 824. Photographs of the victim depicting injuries to the body and the manner of death are relevant to sentencing issues and may be used to illustrate the witness' testimony in this regard. *Daughtry*, 340 N.C. at 518, 459 S.E.2d at 762.

Here, the photographs were used strictly to illustrate the testimony of the medical examiner, Dr. Butts. Each illustrated either a distinct gunshot wound or the extent of the injuries the victims suffered. None were repetitive or inordinately prejudicial. Further, with one exception, all had previously been admitted during the guilt-innocence phase. As noted, N.C.G.S. § 15A-2000(a)(3) provides that evidence presented during the guilt-innocence phase of a capital case is competent and admissible as a matter of law during a sentencing proceeding for that case. *McLaughlin*, 341 N.C. at 458, 462 S.E.2d at 18; *see* N.C.G.S. § 15A-2000(a)(3).

Whether photographic evidence is more probative than prejudicial is a matter within the trial court's discretion. *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). Defendant has failed to show that the trial court abused its discretion by admitting the autopsy photographs at sentencing. This assignment of error is overruled.

[14] Defendant next argues that the trial court improperly permitted the State, on redirect examination and over objection, to question its psychiatric expert, Dr. Rollins, about whether defendant was able to understand and appreciate the nature of his actions when he killed his stepmother and Garrison. Defendant contends that his compe-

tency at the time of the crimes was not an issue at the sentencing proceeding and that Dr. Rollins' testimony on the matter was therefore irrelevant. Defendant seemingly misunderstands the purpose and direction of the State's inquiry.

Defendant offered evidence in support of the mitigating circumstance that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired at the time of the murders. N.C.G.S. § 15A-2000(f)(6). As noted, the State is entitled to present evidence tending to rebut matters proffered in mitigation. *Silhan*, 302 N.C. at 273, 275 S.E.2d at 484. Here, the State could properly present evidence through Dr. Rollins' testimony refuting defendant's claims of diminished capacity and mental impairment at the time of the crimes. Dr. Rollins' testimony had no relation to defendant's competency during the resentencing proceeding. Accordingly, the trial court did not err in overruling defendant's objections.

[15] By his next assignment, defendant contends the trial court erred in denying his request to view notes the prosecutor took during an interview with Gary Brookshire. Brookshire, defendant's stepbrother and the son of victim Heatwole, testified for the State. After the State's direct examination of Brookshire, defendant made a motion, pursuant to N.C.G.S. § 15A-903(f)(2) and *State v. Hardy*, 293 N.C. 105, 235 S.E.2d 828 (1977), to obtain copies of the prosecutor's interview notes. Defendant sought the notes for the specific purpose of discovering potentially mitigating information. The trial court denied the motion but ordered the notes sealed for appellate review. We have reviewed the notes and find them devoid of information beneficial to defendant. Accordingly, defendant was not prejudiced by the trial court's denial of his motion, and this assignment of error is overruled.

[16] Defendant next contends that the prosecutor improperly argued facts not in evidence when he stated that defendant's witness, Beth McAllister, admitted that defendant was convicted of assaulting a sailor while serving in the Marine Corps. In fact, McAllister denied any knowledge of the incident. Defendant did not object to the statement at trial; instead, he contends that the trial court should have intervened *ex mero motu* and that its failure to do so constitutes prejudicial error. We disagree.

Prosecutors are allowed wide latitude in the scope of jury argument. *State v. Zuniga*, 320 N.C. 233, 253, 357 S.E.2d 898, 911, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987). A trial court must inter-

**STATE v. HEATWOLE**

[344 N.C. 1 (1996)]

vene absent an objection only where the prosecutor's argument affects the defendant's right to a fair trial. *Id.* We must therefore determine whether the argument complained of was "so prejudicial and grossly improper as to require corrective action by the trial [court] ex mero motu." *State v. James*, 322 N.C. 320, 324, 367 S.E.2d 669, 672 (1988).

Here, the jury heard evidence of defendant's assaults on a Texas correctional officer and a Texas police officer; of his destruction of his stepmother's property as well as numerous threats he communicated to her; and of his assaultive behavior on other prison inmates, guards, and a physician. Given these repeated examples of defendant's violent nature, the prosecutor's misstatement cannot be construed as so grossly improper that the trial court should have intervened *ex mero motu*. This assignment of error is overruled.

[17] By another assignment of error, defendant argues that the cumulative misconduct of the prosecution deprived him of a fair trial. Defendant cites, *inter alia*, the State's purported failure to divulge mitigating evidence, the "mini-trial" conducted in an effort to prove aggravating circumstances, and a line of questioning conducted by the prosecutor concerning defendant's future dangerousness. Relying on *State v. Sanderson*, 336 N.C. 1, 442 S.E.2d 33 (1994), defendant contends that these instances, taken as a whole, deprived him of a fair sentencing proceeding.

With the exception of the issue of defendant's future dangerousness, we have rejected each of these arguments individually. Thus, absent some further showing of prosecutorial misconduct, there is no basis for now finding them to constitute error collectively. Further, the circumstances surrounding the prosecutorial misconduct in *Sanderson* were far more egregious than the incidental occasions alleged here and thus are not comparable. In *Sanderson* the prosecutor repeatedly badgered defense counsel in the presence of the jury, reducing one defense attorney to tears. He would not allow defense counsel to complete sentences and in several instances turned objections into personal denunciations or expressions of exaggerated incredulity. He verbally abused an expert witness, and in his closing remarks, he argued matters not in evidence and insinuated personal knowledge of other murders the defendant had committed. This persistent pattern of uncorrected and prejudicial abuse before the jury clearly prevented the defendant there from receiving the fair sentencing proceeding that due process requires. Here, by contrast, the

prosecutor's conduct, viewed in the context of his role as a zealous advocate for criminal convictions, was within permissible parameters of professionalism. We conclude that defendant received a fair sentencing proceeding.

Defendant next argues that he was not sentenced before an impartial judge. He asserts that the transcript as a whole demonstrates multiple examples of the judge's bias in favor of the State and against him. Having reviewed the portions of the transcript defendant assigns as error, we conclude that the trial court conducted defendant's sentencing proceeding in an impartial manner and made every effort to ensure that defendant received a fair proceeding. This assignment of error is overruled.

## PRESERVATION ISSUES

Next, defendant raises, but does not argue, several assignments of error he asserts are "preservation issues": (1) the trial court erred in finding defendant competent to stand for resentencing, (2) the trial court erred in denying defendant's request to inform the jury of his calculated release date, and (3) the trial court erred in sustaining the State's objection to the introduction of Defense Exhibit "OO." As we stated in *State v. Gregory*, 340 N.C. 365, 459 S.E.2d 638 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 478 (1996):

> [T]hese issues are not proper preservation issues because they are not determined solely by principles of law upon which this Court has previously ruled. Rather, these assignments of error are fact specific requiring review of the transcript and record to determine if the assignment has merit. Where counsel determines that an issue of this nature does not have merit, counsel should "omit it entirely from his or her argument on appeal." *State v. Barton*, 335 N.C. 696, 712, 441 S.E.2d 295, 303 (1994).

*Gregory*, 340 N.C. at 429, 459 S.E.2d at 675. Nevertheless, we have examined the record and transcript pertinent to these assignments and find them without merit.

Defendant raises seven additional issues which he has properly denominated as preservation issues and which he concedes this Court has decided against his position: (1) the trial court erred in permitting the State to argue defendant's future dangerousness; (2) the trial court erred in allowing the State to argue specific deterrence; (3) the trial court erred in permitting the State to assert that defendant wrote his own death warrant by virtue of his prior conduct; (4) the

**STATE v. HEATWOLE**

[344 N.C. 1 (1996)]

trial court erred in refusing to allow defense counsel to inform the jury of the length of defendant's present sentence and that if defendant received two life sentences, they could be served consecutively; (5) the trial court erred in denying defendant's motion to inform the jury of the consequences of a failure to reach a unanimous decision; (6) the trial court erred in denying defendant's motion to declare the death penalty unconstitutional; and (7) the procedure for the imposition of the death penalty is beyond the comprehension of the average juror. Defendant has presented no compelling reason to reconsider our position on these issues. Accordingly, these assignments of error are overruled.

## PROPORTIONALITY

[18] Having concluded that defendant's capital sentencing proceeding was free of prejudicial error, we turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. It is our duty in this regard to ascertain: (1) whether the record supports the jury's findings of the aggravating circumstances on which the sentence of death was based; (2) whether the death sentence was entered under the influence of passion, prejudice, or other arbitrary consideration; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant. N.C.G.S. § 15A-2000(d)(2).

As to both murders, the jury found as aggravating circumstances that defendant had been previously convicted of a felony involving the use or threat of violence to the person, N.C.G.S. § 15A-2000(e)(3), and that the murder was part of a course of conduct in which the defendant engaged and which included the commission of other crimes of violence against another person or persons, N.C.G.S. § 15A-2000(e)(11). After thoroughly examining the record, transcripts, and briefs, we conclude that the record fully supports the two aggravating circumstances the jury found. Further, we find no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We turn then to our final statutory duty of proportionality review.

In proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895 (1994). We have found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988);

*State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373; *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

This case is distinguishable from those cases. First, defendant here was convicted of two murders. "We have remarked before, and it bears repeating, that this Court has never found disproportionality in a case in which the defendant was found guilty for the death of more than one victim." *State v. Price*, 326 N.C. 56, 96, 388 S.E.2d 84, 107, *sentence vacated on other grounds*, 498 U.S. 802, 112 L. Ed. 2d 7 (1990). Further, there are four statutory aggravating circumstances which, standing alone, this Court has held sufficient to sustain death sentences; the (e)(3) aggravator is among them. *State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 1083 (1995). As noted, the (e)(3) aggravating circumstance reflects upon the defendant's character as a recidivist. *Brown*, 320 N.C. at 224, 358 S.E.2d at 30. Finally, the aggravating circumstances found in this case have been present in other cases where this Court has found the sentence of death proportionate. *See State v. Gardner*, 311 N.C. 489, 319 S.E.2d 591 (1984) (death sentence proportionate in double murder where jury found course of conduct aggravating circumstance), *cert. denied*, 469 U.S. 1230, 84 L. Ed. 2d 369 (1985); *State v. Lawson*, 310 N.C. 632, 314 S.E.2d 493 (1984) (death sentence proportionate where jury found both murders were committed as part of course of conduct involving violence against another), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985). It suffices to say that we conclude that the present case is more similar to cases in which we have found the sentence of death proportionate than to those in which we have found it disproportionate.

After comparing this case to other similar cases as to the crime and the defendant, we conclude that this case has the characteristics of first-degree murders for which we have previously upheld the death penalty as proportionate. Accordingly, we cannot conclude that the death sentences are excessive or disproportionate. Therefore, the judgments of the trial court must be and are left undisturbed.

NO ERROR.