STATE OF NORTH CAROLINA v. MATTHEW OWEN SHAFFER

No. COA08-214

(Filed 7 October 2008)

**1. Appeal and Error— preservation of issue—failure to disclose expert witness information—wrong witness**

An issue concerning the failure to disclose expert witness information was not preserved for appeal where the transcript reference after the assignment of error was to a discussion about a doctor, but the issue on appeal concerned a certified sexual assault nurse.

**2. Rape; Sexual Offenses— multiple offenses—inconsistent verdicts**

Defendant was not entitled to a new trial based upon the alleged inconsistency of verdicts in an incident involving multiple sexual assaults where defendant was convicted of first-degree sexual offense and crime against nature but acquitted of first-degree rape and assault by strangulation. The State presented sufficient evidence to support convictions for each offense and defendant is given the benefit of the acquittals.

Appeal by defendant from judgment entered on or after 29 June 2007 by Judge Gregory A. Weeks in Johnston County Superior Court. Heard in the Court of Appeals 10 September 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Mary Carla Hollis, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse Jr., for defendant-appellant.*

TYSON, Judge.

Matthew Owen Shaffer ("defendant") appeals judgments entered after a jury found him to be guilty of: (1) first-degree sexual offense pursuant to N.C. Gen. Stat. § 14-27.4(a) and (2) crime against nature pursuant to N.C. Gen. Stat. § 14-177. We find no error in the jury's verdicts or the judgments entered thereon.

## I. Background

On 7 June 2006, H.B. ("the victim") and defendant, along with several other people, drove to the Neuse River in Wayne County to "drink beer" and go fishing. After several hours, the group departed from their location and drove to a restaurant located in Goldsboro. Shortly after their arrival, defendant's brother accused the victim of stealing money from him, and an argument ensued. Thereafter, defendant and the victim left together in defendant's girlfriend's vehicle.

Defendant asked the victim "what [she] wanted to do" and "where [she] wanted to go." The victim responded that she wanted to go home. As defendant and the victim approached her residence, defendant asked the victim if she would engage in sexual activity with him. The victim stated, "h-ll no." Defendant continued to drive past the victim's residence to a pond in a field surrounded by woods, approximately a quarter of a mile down the road. Once they arrived

at the pond, defendant attempted to kiss the victim, but she pushed him away and told defendant she "wanted to go home."

Defendant allegedly responded by wrapping his hands around the victim's neck and choking her. Defendant ordered the victim to get out of the vehicle and to remove her pants. The victim hesitated and defendant hit her on the right side of her face with his fist. The victim subsequently complied with defendant's request and undressed. Defendant placed himself on top of the victim and penetrated her mouth, vagina, and rectum with his penis. At this time, the victim was "screaming and crying" for defendant to stop.

Defendant ordered the victim to "get on top of him" and attempted to place his penis inside her rectum a second time. The victim screamed "no." Defendant stood up, bent the victim over the hood of the vehicle, and inserted his penis inside her rectum. Defendant then forced the victim to perform oral sex on him under the threat of violence. Subsequently, defendant ordered the victim to "get on the ground" and he continued to have vaginal intercourse with her for "a long time." All the while, defendant threatened to kill the victim if she told anyone about this incident.

After defendant ejaculated, he ordered the victim to "get in the pond and wash off." Defendant then drove the victim to her residence and dropped her off at the road. The victim entered her residence and crouched down where the phone was located, but could not make a phone call. The victim was crying, spitting out blood, and refused to tell her mother what had transpired because of defendant's threats. Approximately five to ten minutes later, the victim's brother arrived home, observed and spoke with the victim, and called 911.

Johnston County Sheriff Deputy Richard Reliford responded to the 911 call and the victim told him about the incident in detail. Deputy Reliford noted that the victim's right eye was swollen shut, she was bleeding from her mouth, and her clothes were dirty. The victim was transported to Johnston Memorial Hospital by ambulance.

At the hospital, the victim was examined by a board certified sexual assault nurse, Beth Walker ("Walker"). Walker observed that various parts of the victim's body displayed abrasions and were bruised. Walker also observed swelling in the victim's vagina and a tear in her anal area. Walker completed a sexual assault kit. Test results revealed that a DNA profile of sperm found on the victim's shirt matched defendant's DNA profile.

Defendant did not offer any evidence at trial. On 29 June 2007, a jury found defendant to be guilty of first-degree sexual offense for forcible anal intercourse and crime against nature for coerced fellatio. The jury acquitted defendant of first-degree rape and assault by strangulation. The trial court determined defendant had a prior record level of IV and sentenced him in the presumptive range to a minimum of 335 months to a maximum of 411 months imprisonment for his first-degree sexual offense conviction. The trial court also sentenced defendant to a minimum of eight months to a maximum of ten months imprisonment for his crime against nature conviction. Defendant's sentences were ordered to be served concurrently. Defendant appeals.

## II. Issues

Defendant argues the trial court erred by: (1) denying defendant's motion to prohibit the State from calling a sexual assault nurse to testify as an expert and (2) imposing separate sentences for first-degree sexual offense and crime against nature based upon the inconsistency of the verdicts.

## III. Discovery

[1] Defendant argues the trial court erred by permitting the sexual assault nurse, Walker, to testify regarding her observations during her examination of the victim. Defendant asserts the State violated the discovery statute by failing to disclose expert witness information.

### A. Standard of Review

"Whether a party has complied with discovery . . . and what sanctions, if any, to impose are questions addressed to the sound discretion of the trial court." *State v. Heatwole*, 344 N.C. 1, 15, 473 S.E.2d 310, 317 (1996) (citation omitted), *cert. denied*, 520 U.S. 1122, 137 L. Ed. 2d 339 (1997). A trial court may be reversed for an abuse of discretion only upon "a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Banks*, 322 N.C. 753, 761, 370 S.E.2d 398, 404 (1988) (citation omitted).

### B. Appellate Review

The scope of review on appeal is limited to the consideration of those assignments of error set out in the record on appeal in accordance with Rule 10 of the North Carolina Rules of Appellate

Procedure. N.C.R. App. P. 10(a) (2008). Rule 10(c)(1) provides, in relevant part: "An assignment of error is sufficient if it directs the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references." N.C.R. App. P. 10(c)(1) (2008). Here, defendant failed to assign any error to the admission of Walker's testimony based upon the State's violation of the discovery statute. In his brief, defendant's second question presented references assignment of error numbered 5. Defendant's assignment of error numbered 5 in the record on appeal states:

> The trial court committed reversible or, in the alternative, plain error in denying defendant's motion to prevent the state from calling a witness for whom no report was timely provided, thereby denying defendant his federal and state constitutional rights and his rights under state law.

Immediately following this assignment of error, defendant references "Tp. 545, lines 7-9[.]" However, the transcript references a colloquy between defense counsel and the trial court concerning the testimony of Dr. Daniel Catz, not Walker. Specifically, defense counsel argued to the trial court that Dr. Catz should not be permitted to opine how the victim's injuries were sustained because the State had allegedly failed to provide defendant with a copy of *his* expert opinion. Defendant failed to assign error to Walker's testimony in the record of appeal. This issue is not preserved for appellate review and is not properly before this Court. N.C.R. App. P. 10(a), (c)(1).

Nevertheless, "Appellate Rule 2 specifically gives either court of the appellate division the discretion to suspend or vary the requirements or provisions of any of the rules in order to prevent manifest injustice to a party, or to expedite decision in the public interest." *State v. Hart*, 361 N.C. 309, 315, 644 S.E.2d 201, 204-05 (2007) (citation and quotation omitted); *see also Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008). However, "the exercise of [Appellate] Rule 2 was intended to be limited to occasions in which a fundamental purpose of the appellate rules is at stake, which will necessarily be rare occasions." *Hart*, 361 N.C. at 316, 644 S.E.2d at 205 (citations and quotations omitted). After a thorough examination of the record and transcripts, in our discretion, we decline to invoke Appellate Rule 2. No showing is made and the record fails to support that the Rules of Appellate Procedure need to be suspended in this case to "prevent manifest

injustice" to defendant. *Id.* at 315, 644 S.E.2d at 205. This assignment of error is dismissed.

## IV. Inconsistent Verdicts

**[2]** Defendant argues that the verdicts for his first-degree sexual offense and crime against nature were inconsistent given the evidence presented at trial and the jury's decision to acquit him of first-degree rape and assault by strangulation. We disagree.

In North Carolina, it is well-established that "a jury is not required to be consistent and that incongruity alone will not invalidate a verdict." *State v. Rosser*, 54 N.C. App. 660, 661, 284 S.E.2d 130, 131 (1981) (citations omitted). The reasoning behind this legal principle was enunciated by the United States Supreme Court in *United States v. Powell*:

> where truly inconsistent verdicts have been reached, the most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. The rule that the defendant may not upset such a verdict embodies a prudent acknowledgment of a number of factors. First, as the above quote suggests, inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause.
>
> . . . .
>
> *We also reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them.* Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries

into the jury's deliberations that courts generally will not undertake. Jurors, of course, take an oath to follow the law as charged, and they are expected to follow it.

469 U.S. 57, 64-66, 83 L. Ed. 2d 461, 468-69 (1984) (internal citations and quotations omitted) (emphasis supplied); *see also State v. Reid*, 335 N.C. 647, 658, 440 S.E.2d 776, 782 (1994) (adopting the reasoning articulated in *United States v. Powell* for allowing seemingly inconsistent verdicts in the same trial). The United States Supreme Court also noted that "a criminal defendant . . . is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." *Powell*, 469 U.S. at 67, 83 L. Ed. 2d at 470.

Here, the jury convicted defendant of first-degree sexual offense and crime against nature. *See* N.C. Gen. Stat. § 14-27.4(a)(2)(b) (2007) (providing that a person is guilty of first-degree sexual offense if the person engages in a sexual act; with another person by force and against the will of the other person; and inflicts serious personal injury upon the victim or another person); N.C. Gen. Stat. § 14-177 (2007) ("If any person shall commit the crime against nature, with mankind or beast, he shall be punished as a Class I felon."). It is undisputed that the State presented sufficient evidence tending to support defendant's convictions on each of these offenses. The State also presented evidence which would have supported a guilty verdict on the offense of first-degree rape, and the greater offenses of crime against nature, first-degree and second-degree sexual offense based upon forced fellatio. However, the jury voted to find defendant not guilty of these crimes. Although the results on these charges may be difficult to reconcile, this Court is not required to grant defendant a new trial. *See Powell*, 469 U.S. at 69, 83 L. Ed. 2d at 471 ("[T]here is no reason to vacate respondent's conviction merely because the verdicts cannot rationally be reconciled. Respondent is given the benefit of her acquittal on the counts on which she was acquitted, and it is neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted."). This assignment of error is overruled.

## V. Conclusion

Defendant failed to assign any error to Walker's testimony in the record on appeal. Accordingly, this issue is not preserved for appellate review and is not properly before us. N.C.R. App. P. 10(a), (c)(1). In our discretion, we decline to invoke Appellate Rule 2 because the

Rules of Appellate Procedure need not be suspended in this case to "prevent manifest injustice" to defendant. N.C.R. App. P. 2.

Defendant is not entitled to a new trial based upon the alleged inconsistency of the jury's verdicts and the judgments entered thereon. *Powell*, 469 U.S. at 69, 83 L. Ed. 2d at 471. Defendant received a fair trial, free from the prejudicial error he preserved, assigned, and argued.

No Error.

Judges CALABRIA and ELMORE concur.